IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ANGELA VNUK, :
:
      Plaintiff, :
:
v. : 3:14-CV-01432
: (JUDGE MARIANI)
BERWICK HOSPITAL CO. and :
MALIYAKKAL J. JOHN, :
:
      Defendants. :

## MEMORANDUM OPINION

### I. Introduction

Presently before the Court is a dispute as to the proper conduct of counsel during depositions. The Opinion that follows is written not only for the benefit of the parties, but rather serves as a statement of the standards that I expect all counsel to adhere to in all depositions in cases before the undersigned, now and in the future.

### II. Background

Angela Vnuk is the Plaintiff in this case. She is a nurse formerly employed at Defendant Berwick Hospital. While employed at the Hospital, she alleges, among other things, that she was repeatedly sexually harassed by fellow employee Maliyakkal John, a medical doctor, and that Dr. John and the Hospital illegally retaliated against her when she complained about this unwelcome attention.

The parties began Ms. Vnuk's deposition on February 24, 2016. Unfortunately, that deposition was plagued with disputes between counsel for Vnuk and counsel for Berwick Hospital, as first reported to the Court by a letter from Berwick's counsel, Sidney Steinberg, on February 25, 2016. That letter reported multiple improprieties on the part of Plaintiff's counsel.

First, according to Steinberg's letter, "[d]uring the course of the deposition, counsel for Ms. Vnuk (Mr. [Barry] Dyller) spoke with his client during multiple breaks, including a 30+ minute lunch, in what appeared to be an attempt to coach or instruct Ms. Vnuk regarding her testimony." (Sidney Steinberg Letter, Feb. 25, 2016, Doc. 42, at 1.)

The letter further represented that communication between Attorney Dyller and his client even persisted during Ms. Vnuk's testimony:

> On one occasion, during questioning, counsel showed his client something that he had written on a pad of paper (and audibly noted to her: "here, here and here") and on another occasion he audibly whispered to his client (although what he said was unclear). Each time this occurred I [Steinberg] asked Ms. Vnuk the subject of the conversation and counsel directed her not to respond.

(*Id.*) Attorney Steinberg provided opposing counsel with the case *Plaisted v. Geisinger Medical Center*, 210 F.R.D. 527, 535 (M.D. Pa. 2002) which states, citing *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993) that such communication is inappropriate and not subject to attorney-client privilege. However, opposing counsel did not accept this guidance. Instead, he argued, in a subsequent letter to this Court, that *Hall*'s rule is not the law of this

Circuit and that various district court decisions from Colorado, Utah, and Nevada are more persuasive. (*See* Barry Dyller Letter, Feb. 26, 2016, Doc. 44, at 3-6.)

Attorney Steinberg's letter also registers several other complaints, as follows:

> Further, counsel [Dyller] engaged in long speaking objections which appeared designed to influence his client's testimony. This included a lengthy on-the-record questioning of me as to why Ms. Vnuk was being questioned about a chart summarizing her time records *which was produced during discovery.* Ms. Vnuk subsequently refused to respond to questions about the document for a lengthy period of time although she eventually relented. Finally, the deposition concluded when counsel [Dyller], visibly frustrated with his client's responses regarding an exhibit stated, on the record: "we are almost done and we will get to a natural break point." I then questioned Ms. Vnuk as to whether she was capable of continuing the deposition . . . to which she said she was not.

(Doc. 42 at 2.)

On all of these bases, Attorney Steinberg requested "a brief telephone conference" with the Court before Ms. Vnuk's deposition was scheduled to resume on March 2. (*Id.*) As relief, he sought an Order from this Court on "the issue of whether Ms. Vnuk may be questioned about conversations that she had with her attorney during the course of the deposition and whether counsel [Dyller] should be required to produce the note that he shared with Ms. Vnuk during the deposition." (*Id.*) He also requested that Berwick be reimbursed the $370 it reportedly incurred in attorneys' fees related to this dispute. (*Id.*)

For his part, Attorney Dyller's reply disavowed all allegations of improper coaching. (Doc. 44 at 1.) Instead, he placed the blame for the deposition's derailment on Steinberg, writing:

3

> At the deposition, instead of asking plaintiff Ms. Vnuk about what had happened to her . . . Mr. Steinberg spent the bulk of the 6.5 hours of the deposition (minus a half hour lunch break and short other breaks) brutalizing Ms. Vnuk with matter that clearly is immaterial and inadmissible, and was designed solely to harass her.

(*Id.* at 2.) These lines of questioning concerned such matters as "whether Ms. Vnuk had ever been unfaithful to her husband, whether Ms. Vnuk had viewed pornography on a Twitter account (unrelated to anything Ms. Vnuk might have done at work), [and] whether Ms. Vnuk had magistrate judgments for unpaid bills." (*Id.* at 2.)

Ultimately, Attorney Dyller represented that Steinberg's behavior caused Vnuk to "becom[e] hysterical and unable to continue with the deposition." (*Id.* at 3.) He wrote:

> In addition to the largely irrelevant nature of Mr. Steinberg's questioning, Mr. Steinberg was extremely rude and unprofessional to both Ms. Vnuk and to me. Mr. Steinberg laughed at Ms. Vnuk, mocked her, rolled his eyes at her, and similar such behavior. Mr. Steinberg was sarcastic both to Ms. Vnuk and to me.

(*Id.* at 2.) Attorney Dyller then opined that such behavior "showed a particular insensitivity to Ms. Vnuk" given the nature of the sexual harassment that she alleged.

Moreover, while Attorney Dyller admitted that he did "show Ms. Vnuk [his] note pad and say 'here and here and here'" during her testimony, he insisted that "[t]here was nothing improper about that." (*Id.* at 3.) Rather, he argued that he was merely "showing Ms. Vnuk how [he] intend[s] to protect her from such abusive questioning at trial." (*Id.*)

The Court held a conference call on these matters on March 1, 2016. Attorney Dyller explained during that call that, when he pointed to his notepad, he pointed to the words "in

4

limine, in limine, in limine." While the explanation is not entirely clear, it appears that we are supposed to take it to mean that Dyller intended to tell Ms. Vnuk that he would exclude such matters from trial via motions in limine.

The Court heard argument from both sides during the conference call and issued an oral order as to how the rest of Vnuk's deposition should proceed on March 2. The following Opinion and Order set forth the Court's decision in written form.

### III. <u>Communications During Depositions</u>

As the Court stated in the conference call, the rule in *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa. 1993), on attorney-client communications during depositions is widely accepted among the Pennsylvania district courts. *See, e.g.*, *Wise v. Washington Cnty*, Civ. No. 10-1677, 2014 U.S. Dist. LEXIS 29267, at 27 (W.D. Pa. Mar. 7, 2014) ("Judge Gawthrop's opinion in *Hall v. Clifton Precision* provides the legal standards for attorney conduct during an oral deposition."); *id.* at 27 n.17 (citing Thomas G. Wilkerson, Jr. & Jordan Fox, "Encouraging Civility During Depositions: The Enduring Impact of *Hall v. Clifton Precision*," Pa. Bar Assoc. Quarterly 104 (July 2013)). In *Hall* the Court held, in clear and eloquent language:

> A lawyer, of course, has the right, if not the duty, to prepare a client for a deposition. But once a deposition begins, the right to counsel is somewhat tempered by the underlying goal of our discovery rules: getting to the truth. Under Rule 30(c), depositions generally are to be conducted under the same testimonial rules as are trials. During a civil trial, a witness and his or her lawyer are not permitted to confer at their pleasure during the witness's testimony. Once a witness has been prepared and has taken the stand, that witness is on his or her own.

5

The same is true at a deposition. The fact that there is no judge in the room to prevent private conferences does not mean that such conferences should or may occur. The underlying reason for preventing private conferences is still present: they tend, at the very least, to give the appearance of obstructing the truth.

These considerations apply also to conferences initiated by the witness, as opposed to the witness's lawyer. To allow private conferences initiated by the witness would be to allow the witness to listen to the question, ask his or her lawyer for the answer, and then parrot the lawyer's response. Again, this is not what depositions are all about—or, at least, it is not what they are supposed to be all about. If the witness does not understand the question, or needs some language further defined or some documents further explained, the witness can ask the deposing lawyer to clarify or further explain the question. After all, the lawyer who asked the question is in a better position to explain the question than is the witness's own lawyer. There is simply no qualitative distinction between private conferences initiated by a lawyer and those initiated by a witness. Neither should occur.

The same reasoning applies to conferences about documents shown to the witness during the deposition. When the deposing attorney presents a document to a witness at a deposition, that attorney is entitled to have the witness, and the witness alone, answer questions about the document. The witness's lawyer should be given a copy of the document for his or her own inspection, but there is no valid reason why the lawyer and the witness should have to confer about the document before the witness answers questions about it. If the witness does not recall having seen the document before or does not understand the document, the witness may ask the deposing lawyer for some additional information, or the witness may simply testify to the lack of knowledge or understanding. But there need not be an off-the-record conference between witness and lawyer in order to ascertain whether the witness understands the document or a pending question about the document.

As mentioned above, the majority of federal courts which have issued deposition guidelines have held that a private conference between witness and attorney is permissible if the purpose of the conference is to decide whether to assert a privilege. With this exception I agree. Since the assertion of a privilege is a proper, and very important, objection during a deposition, it makes sense to allow the witness the opportunity to consult with counsel about whether to assert a privilege. Further, privileges are violated not only by the admission of privileged evidence at trial, but by the very disclosures themselves. Thus, it is important that the witness be fully informed of his or

6

> her rights before making a statement which might reveal privileged information. However, when such a conference occurs, the conferring attorney should place on the record the fact that the conference occurred, the subject of the conference, and the decision reached as to whether to assert a privilege.

*Hall*, 150 F.R.D. at 528-30.

In light of these standards, it is clear that Plaintiff's counsel was prohibited from speaking with his client during her deposition unless they conferred about whether to assert a privilege. Counsel's decision to confer with his client on other matters, whether that was by "whispering" to Vnuk or showing her his notes during her testimony, or whether it was by speaking with her about the subject matter of the deposition during lunch and other breaks, is wholly inappropriate, unprofessional, and—if it occurs again—sanctionable. Moreover, under *Hall* these prohibited conferences are not covered by the attorney-client privilege and therefore permit opposing counsel to inquire as to the contents of these conversations. *Plaisted*, 210 F.R.D. at 535 (citing *Hall*, 150 F.R.D. at 529 n.7).

Furthermore, the Plaintiff's attempt to cast doubt on *Hall*'s precedential value is without merit. None of the cases that she cites come from district courts within this Circuit; whatever those cases' individual merits may be, *Hall* is well-established here. *See, e.g., Wise*, 2014 U.S. Dist. LEXIS 29267, at *27. The decisions of other district courts half a continent away are insufficient to override *Hall*'s broad acceptance in Pennsylvania, where the parties and attorneys here live and practice.

However, even if, hypothetically, we ignored *Hall*'s precedential value and followed the extra-jurisdictional cases cited in Plaintiff's letter, our decision would not change, as even those cases do not allow Plaintiff's counsel's conduct. That is, Plaintiff cites four district court cases, the first three of which all ultimately rely on the fourth, *In re Stratosphere Corporation Securities Litigation*, 182 F.R.D. 614, 621 (D. Nev. 1998).[1] *Stratosphere* agreed with *Hall*'s identification of abusive deposition practices, but followed a more relaxed solution to that problem, wherein a deponent-client may confer with his or her attorney during recesses so long as no question to that deponent is pending. *Stratosphere*, 182 F.R.D. at 621. But neither *Stratosphere* nor any of the cases following it permit counsel to pass notes to a client or to whisper to the client while the client actually testifies, as Attorney Dyller did here. *Cf. id.* (agreeing with *Hall*'s strictures against "attorney-coaching of witnesses"). We are not opposed to allowing a deponent to speak with his or her attorney during recesses, as long as the discussion does not relate to the case in connection with which the client is being deposed. Once the deponent is sworn and the deposition begins, counsel and his or her client are not permitted to confer about the subject matter of the deponent's testimony. Any such communication contrary to this rule is not privileged and must be disclosed to opposing counsel upon such counsel's inquiry.

---

[1] The first two cited cases, *Cannon v. Time Warner NY Cable, LLC*, Civ. No. 13-2521, 2015 WL 2194620, at *1 (D. Colo. May 7, 2015) and *Pia v. Supernova Media, Inc.*, Civ. No. 09-840, 2011 WL 6069271, at 3 (D. Utah Dec. 6, 2011), rely on the third cited case, *McKinley Infuser, Inc.*, 200 F.R.D. 648, 650 (D. Colo. 2001), which in turn relies for its holding on *In re Stratosphere*.

8

Therefore, at the deposition that occurs on March 2, Attorney Steinberg shall be permitted to inquire from Ms. Vnuk as to the content of her communications with Attorney Dyller during her testimony and during recesses, and shall further be permitted to examine the note that Attorney Dyller showed Ms. Vnuk during her testimony.

## IV. Speaking Objections

To the extent that Attorney Dyller "engaged in long speaking objections . . . to influence his client's testimony," (Doc. 42 at 2), such conduct is also inappropriate, unprofessional, and subject to sanctions if repeated. As the *Hall* court stated:

> The underlying purpose of a deposition is to find out what a witness saw, heard, or did—what the witness thinks. A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which questions the witness should answer, and helping the witness to formulate answers. The witness comes to the deposition to testify, not to indulge in a parody of Charlie McCarthy, with lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness—not the lawyer—who is the witness.

*Hall*, 150 F.R.D. at 528.

The same considerations prohibiting witness-coaching also limit the use of speaking objections, which, through the technical form of an objection, signal to the deponent the answer that his or her attorney prefers. "Without guidelines on suggestive objections, the spirit of the prohibition against private conferences could be flouted by a lawyer's making of lengthy objections which contain information suggestive of an answer to a pending question." *Id.* at 530. "[O]bjections and colloquy by lawyers tend to disrupt the question-and-

9

answer rhythm of a deposition and obstruct the witness's testimony." *Id.* Thus, in the context of depositions, the *Hall* court wrote: "Since most objections, such as those grounded on relevance or materiality, are preserved for trial, they need not be made. As for those few objections which would be waived if not made immediately, they should be stated pithily." *Id.* (citing Fed. R. Civ. P. 32(d)(3)).

I agree with *Hall*'s analysis. To allow "strategic interruptions, suggestions, statements, and arguments of counsel" during deposition frustrates the very purpose of that procedure under the Federal Rules: to be "question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit" and therefore "to find and fix the truth." *Id.* at 531. Speaking objections, or any other type of strategic interruption meant to undermine the truth-finding purpose of depositions through an attorney's intermediation, will not be tolerated in this or any other proceeding assigned to me.

### V. **Rude and Obnoxious Behavior**

Finally, counsel are reminded of their status as officers of this court, a status which does not change outside the presence of the judge. Any deposition conducted "under the caption of this court and proceeding under the authority of the rules of this court" carries with it the requirement that attending attorneys comport themselves with professionalism, honesty, and integrity. Thus, every witness who is deposed in a case whose captions bears the name of the undersigned is entitled to receive the same respect and fair treatment that he or she would receive if examined before me in open court. The mere fact that I am not

present at depositions is no license to turn those proceedings into a vehicle for psychological abuse of deponents. Any attempts to submit a deponent to the abusive treatment alleged here—whether at the hands of Attorney Steinberg or anyone else—may be grounds for sanctions against the offending attorney. It may also be grounds, on good cause shown, for a protective order pursuant to Federal Rule 26(c) "protect[ing] a party or person from annoyance, embarrassment, oppression, or undue burden."

## VI. Attorneys' Fees

Defendant Berwick Hospital has shown insufficient grounds for its entitlement to $370 in attorneys' fees. Accordingly, this request is denied.

## VII. Conclusion

The foregoing discussion should govern the conduct of Angela Vnuk's deposition on March 2 and of any other deposition that occurs in this and other cases before the undersigned. A separate Order follows.

_/s/ Robert D. Mariani_
Robert D. Mariani
United States District Judge